ORIGINAL
IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION
FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 JUL 31 P 4: 20
CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| LESTER J. SMITH, JR., | ) | |
| Plaintiff, | ) | |
| v. | ) | CV 311-044 |
| DONALD BARROW, | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The case is presently before the Court on Defendant's motion to dismiss and Plaintiff's motion for preliminary injunctive relief. (Doc. nos. 39, 56-1, 56-2.) Each party has filed a response to the other party's motion and a reply in support of his own motion, and Plaintiff has filed various additional documents in support of his motion for preliminary injunctive relief. (Doc. nos. 46, 49, 61, 63, 64, 65, 69.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that both the instant motions be **DENIED**.

### I. BACKGROUND

According to Plaintiff's complaint, he was transferred from a different state prison facility to TSP in April of 2010 for "religious [and] therapeutic dietary reasons." (Doc. no.

1, pp. 7-8.)[1] Plaintiff alleges that, following his transfer to TSP, he was placed in a segregated confinement because of a disciplinary infraction. (Id. at 8.) In addition, Plaintiff reports that he is a practicing Muslim and that, as a result, he had a prisoner "profile" for a restricted vegan diet at the time of the events alleged in his complaint. (Id.)

Plaintiff alleges that "while being in segregation at [TSP]," prison officials "continuously denied [his] restricted diet."[2] (Id. at 8-9.) Plaintiff states that he refused to eat any food "not in accordance with [his] religious belief" and that, as a result, he "did not eat for eleven days straight and became fatigued, eventually passing out." (Id. at 9.) Although Plaintiff alleges that the prevailing practice among prison officials at TSP was not to allow him meals that comported with his religious principles while he was in segregated confinement, he states that, after he refused to eat, one correctional officer began to order him vegan meals while she was on duty. He also states that a different correctional officer provided him with a vegan meal on a single occasion. (Id.) Plaintiff indicates that he

---

[1]Following his commencement of this action, Plaintiff filed multiple requests to amend his pleadings. (See doc. nos. 5, 7.) The Court informed Plaintiff that he was entitled to amend his complaint but instructed Plaintiff that he must set forth all his allegations in a single amended document rather than amend his pleadings in an improper piecemeal manner. (Doc. no. 10.) Plaintiff then withdrew requests to amend, choosing instead to rely on his original complaint. (Doc. no. 11.)

[2]Plaintiff states that, while he was confined with the general population prior to being placed in segregated confinement, he was denied a "restricted vegan tray" on a single occasion. (Doc. no. 1, p. 8.) However, the bulk of his allegations of interference with his religious diet concern the time he spent in segregated confinement. (See, e.g., id. at 8-9 ("Plaintiff has not been able to practice his religious practices <u>while in segregation</u> at [TSP]. . . . <u>While being in segregation</u> at [TSP, prison officials] continuously denied my restricted vegan diet." (emphasis added)).)

2

"exhausted the entire prison grievance procedure," but he states his grievances were denied at each level of such procedure. (Id. at 3-4.)

Because Plaintiff filed this case as a prisoner proceeding IFP, the Court screened his complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A. Based on the allegations in his complaint, the Court allowed Plaintiff to proceed with a First Amendment claim against Defendant, the Warden of TSP during the relevant time period, in his individual capacity for interference with Plaintiff's right to free practice of religion.[3,4] (Doc. no. 26.) In addition, simultaneously with its screening of Plaintiff's complaint, the Court addressed multiple motions for preliminary injunctive relief filed by Plaintiff, recommending that the first three such motions be denied as moot and that the remaining ones be denied for lack of jurisdiction. (Doc. no. 27, pp. 16-19.) Judge Bowen adopted the Court's recommendation and denied the motions for preliminary injunctive relief. (Doc. no. 38.)

---

[3] In allowing Plaintiff to proceed with this claim, the Court noted that supervisory officials such as Defendant "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." (Doc. no. 26, p. 5 n.3 (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).) However, the Court found that is was appropriate for Plaintiff's First Amendment claim to proceed against Defendant because it could be reasonably inferred from the complaint that the purported interference with Plaintiff's right to free practice of religion was the result of a facility-wide custom or policy. (Id.)

[4] Upon screening Plaintiff's complaint, the Court additionally recommended that numerous additional claims, as well as the 26 other individuals named as defendants in Plaintiff's complaint, be dismissed from this action. (Doc. no. 27.) The Honorable Dudley H. Bowen, Jr., United States District Judge, adopted that recommendation as the opinion of the District Court. (Doc. no. 38.)

3

## II. DISCUSSION

### A. Motion to Dismiss

Defendant argues that Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim against him upon which relief may be granted. Defendant also asserts entitlement to qualified immunity. (Doc. nos. 39-1, 49.) Plaintiff disputes these contentions. (Doc. no. 46.) For the reasons set forth below, Defendant's motion should be denied.

#### 1. Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992) (Edenfield, J.). In deciding a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to the non-moving party. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). Furthermore, a claim should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561-62 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, granting a motion to dismiss is disfavored and rare. Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (*per curiam*). Finally, while factual allegations in the complaint

must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985) (*per curiam*). With these principles in mind, the Court turns its attention to the instant motion to dismiss.

### 2. Plaintiff's Complaint States a Valid § 1983 Claim Against Defendant

Defendant argues that Plaintiff's allegations fail to state a valid claim because they neither demonstrate that he personally interfered with Plaintiff's right to practice religion nor provide facts sufficient to hold him liable because of his supervisory position as Warden of TSP. (Doc. no. 39-1, pp. 4-8; doc. no. 49, pp. 2-4.) Defendant further argues that the denial of religious meals to prisoners in segregated confinement as a matter of prison policy does not run afoul of the First Amendment because "[l]egitimate penological interests justified the Officers' denial of Plaintiff's requested meals while he was in segregation." (Doc. no. 39-1, pp. 8-13.) Plaintiff disputes these contentions, arguing that his allegations regarding the denial of meals that comport with his religious beliefs state a First Amendment claim that involves a violation of clearly established law. (See doc. no. 46.)

As explained below, the Court finds that Defendant's arguments for dismissal are without merit.

#### a. Plaintiff Adequately Alleges a Constitutional Deprivation Based on Prison Custom or Policy

The Court rejects Defendant's contention that Plaintiff's allegations fail to provide facts sufficient to hold him liable because of his supervisory position as Warden of TSP. (See doc. no. 39-1, pp. 4-8; doc. no. 49, pp. 2-4.) Although Plaintiff's complaint fails to

5

provide facts demonstrating that Defendant personally participated in the alleged constitutional deprivation, the complaint sets forth allegations from which it may be inferred that such deprivation resulted from a facility-wide custom or policy.

"Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley, 193 F.3d at 1269 (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)); Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when an "improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'"[5] Hartley, 193 F.3d at 1269 (quoting Rivas, 940 F.2d at 1495). A causal connection may also be shown when the facts support "an inference that the

---

[5] Of note, the type of "custom or policy" that may give rise to liability in this fashion does not have to take the form of a codified regulation. See, e.g., Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (noting that "failure to adequately train [law enforcement officers] may constitute a 'policy'" sufficient to establish a supervising official's liability); see also City of Canton v. Harris, 489 U.S. 378, 387 (1989) (holding that unconstitutional application of a valid policy may result in liability based on an improper "custom or policy" in a § 1983 action).

6

supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, the allegations in Plaintiff's complaint sufficiently demonstrate a causal connection between Defendant, the former Warden of TSP, and a constitutional deprivation based on a facility-wide "custom or policy" of not providing meals that comport with religious dietary restrictions to inmates in segregated confinement. Plaintiff alleges that multiple prison officials under Defendant's supervision at TSP "continuously denied [his] restricted diet" while he was in segregated confinement. (Doc. no. 1, pp. 8-9.) In addition, Plaintiff alleges that this practice of denying specialized religious-based meals to inmates in his segregation unit was consistent enough that it resulted in a period of eleven days in which he was not given the vegan meals that he was customarily allowed as a practicing Muslim. By alleging that the prevailing practice at TSP was to deny him a diet that accorded with his religious principles because he was in segregation, Plaintiff has adequately pled the existence of a "custom or policy" such that his claim against Defendant should not be dismissed for lack of a causal connection.

In making this determination, this Court rejects Defendant's contention that Plaintiff cannot proceed with a claim based on an improper custom or policy because he admits that one correctional officer provided him with a vegan meal on a single occasion and, after he refused to eat, another correctional officer began to provide him with vegan meals while she was on duty. (Doc. no. 39-1, pp. 7-8.) Viewing the facts in the light most favorable to Plaintiff, as the Court must at this stage, these allegations merely show that, on a limited

7

number of occasions, two officers broke from the prevailing practice of not providing Plaintiff's religious-based meals while he was in segregation. Defendant provides no authority for the proposition that an inmate must allege uniform compliance with a particular practice in order for it to qualify as a "custom or policy" sufficient to establish liability on the part of a supervisory official. Defendant's remaining arguments against finding a custom or policy likewise miss the mark in that they relate to allegations concerning events at a different prison, and Plaintiff's attempted claims concerning such allegations were dismissed without prejudice upon the screening of his complaint because they do not relate to his claim concerning the events at TSP. (See doc. no. 27, pp. 14-15; doc. no. 38.)

In sum, the allegations in Plaintiff's complaint sufficiently demonstrate a causal connection based on a custom or policy at TSP, and Defendant's contention that Plaintiff's claim should be dismissed for lack of such a connection is without merit.

    **b. Plaintiff's Claim Is Facially Adequate Such That a Factual Record Is Needed To Determine Its Merits**

The next issue is whether Plaintiff has sufficiently alleged a constitutional deprivation based on the denial of meals that conform to his religious beliefs. As noted previously, Defendant argues that Plaintiff's claim should be dismissed because "[l]egitimate penological interests justified the Officers' denial of Plaintiff's requested meals while he was in segregation." (Doc. no. 39-1, pp. 8-13.)

A prisoner may state a valid First Amendment claim by alleging facts demonstrating that "he was denied a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Cruz

v. Beto, 405 U.S. 319, 322 (1972). In order to prevail on such a claim, a plaintiff "must first demonstrate to the trial court the deprivation of a right either by (1) deliberate discrimination, or by (2) even handed application of an inherently discriminatory rule." Walker v. Blackwell, 411 F.2d 23, 25 (5th Cir. 1969).[6] "[A]llegations of state interference with religious practices not facially idiosyncratic state a claim under the First Amendment that can only be defeated if the state demonstrates a 'substantial and compelling interest' justifying the regulation." Saleem v. Evans, 866 F.2d 1313, 1316 (11th Cir. 1989). Such a substantial and compelling interest may involve security or financial concerns within a prison. Walker, 411 F.2d at 26; Cochran v. Sielaff, 405 F. Supp. 1126, 1128 (S.D. Ill. 1976).

However, the Eleventh Circuit has admonished that "to strike the proper balance between the competing interests of prison officials in secure and efficient administration, on the one hand, and of inmates in complying with the requirements of religious doctrine, on the other, the aid of a factual record is essential." Saleem, 866 F.2d at 1316. Therefore, in reviewing the adequacy of a First Amendment claim, the Court ordinarily may not assume that prison officials have an interest that is "legitimate, compelling and substantial without any allegations or evidence to support such a finding." Id. at 1317; see also Scott v. Brown, Civil Action No. 1:11-CV-2514, 2012 U.S. Dist. LEXIS 44669, at *15 (N.D. Ga. Jan. 31, 2012) ("[I]t is improper to dismiss a First/Fourteenth Amendment claim [based on interference with a prisoner's religious practices] without any fact finding regarding the state's actual justification for the contested regulation or practice."), *adopted as opinion of*

---

[6] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

9

District Court, 2012 U.S. Dist. LEXIS 44653 (N.D. Ga. Mar. 29, 2012).

Here, Defendant proffers various penological concerns that he contends justify the denial of meals to inmates in segregation, including the cost of providing special meals, the security threat posed the possibility of other inmates becoming "insubordinate" over one inmate's special treatment, and a potential "ripple effect" that could result in other inmates requesting special meals in segregated confinement. (Doc. no. 39-1, pp. 11-13.) Of note, Defendant provides no evidentiary basis for these assertions, see id., and, as explained above, the standard of review for the instant motion to dismiss limits the Court to reviewing the sufficiency of the allegations in the complaint. See supra Part II.A.1. As a result, the Court concludes that the unsupported assertions of Defendant's counsel set forth in a brief in support of a motion to dismiss provide no basis for finding that Defendant has established compelling interests justifying the alleged interference with Plaintiff's religious practices. Saleem, 866 F.2d at 1316. As a result, the Court rejects Defendant's assertion that such interests warrant the dismissal of Plaintiff's claim.

Therefore, Plaintiff has adequately pled his First Amendment claim premised on Defendant's alleged interference with his right to practice religion, and Defendant's contention that Plaintiff's complaint fails to state a claim upon which relief may be granted is without merit.

### 3. Defendant Is Not Entitled to Qualified Immunity Based on the Allegations in Plaintiff's Complaint

Furthermore, the Court concludes that Defendant is not entitled to qualified immunity at the current stage of this action. According to Defendant, even if the Court finds that

Plaintiff stated a valid First Amendment claim, "Plaintiff cannot show that clearly established law exists that would have put [Defendant] on notice that his actions violated Plaintiff's constitutional or statutory rights." (Doc. no. 39-1, p. 16.) Plaintiff argues that Defendant is not entitled to qualified immunity in light of the allegation that he was systematically denied meals that were consistent with his religious beliefs during his segregated confinement at TSP. (Doc. no. 46, pp. 1-2.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010). The defendant must show that he was acting within his discretionary authority; if he does, then "the plaintiff must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). "A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court

of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Here, the Court agrees with Defendant that he was acting within his discretionary authority because "[a]t all times relevant to the allegations in Plaintiff's Complaint, [he] was acting within the scope of his authority as the Warden of TSP . . . ." (Doc. no. 39-1, p. 14.) However, for the reasons outlined above, the Court concludes that Plaintiff's complaint states a valid claim for the violation of his First Amendment rights, thereby establishing the first prong of his burden under the qualified immunity analysis. See supra Part II.A.2. Moreover, as discussed above, see id., it is well-established under Supreme Court and Eleventh Circuit law that a prisoner may state an First Amendment claim by alleging that a prison official interfered with his right to practice his religion. See, e.g., Cruz, 405 U.S. at 319-23 (finding prisoner stated a valid First Amendment claim by alleging that prison officials prohibited him from communicating with his religious advisor, using the prison chapel, and sharing religious material with other inmates); Saleem, 866 F.2d at 1314-16 (finding that Muslim prisoner state a valid First Amendment claim by alleging that prison officials interfered with observance of Ramadan by, among other things, failing to make allowances for the provision of special meals). In light of the Eleventh Circuit and Supreme Court case law delineating the nature of the First Amendment right at issue in Plaintiff's claim, the Court rejects Defendant's assertion that Plaintiff's allegations fail to demonstrate a violation of clearly established law.

In sum, Plaintiff has adequately pled his First Amendment claim against Defendant, and Defendant is not entitled to qualified immunity based on the allegations in Plaintiff's

complaint. Consequently, Defendant's motion to dismiss should be denied.

## B. Plaintiff's Motion for Preliminary Injunctive Relief

The Court next turns to Plaintiff's motion for preliminary injunctive relief,[7] in which he asserts that TSP's new Warden, David Frazier, has retaliated against him by placing him in segregation and by interfering with his mail on various occasions, one of which allegedly involved legal mail in a case that is not related to the instant action.[8] (Doc. no. 56, pp. 1-2.) Plaintiff appears to ask that the Court issue an order requiring all prison officials at TSP to discontinue their interference with Plaintiff's mail. (See id.; doc. no. 64, p. 3.) In response, Defendant asserts that Plaintiff was placed in segregation for failure to follow orders and that Plaintiff has not been denied access to his mail; Defendant contends that Plaintiff is not entitled to any form of injunctive relief. (Doc. no. 61, pp. 1-5.) In support of his response, Defendant produced an affidavit from Michelle Johnson, a prison official in TSP's administrative office, who states that Plaintiff was transferred to segregated confinement for refusing to comply with prison policy and orders regarding the length of his beard. Ms. Johnson further attests that Plaintiff has neither been denied incoming mail nor prevented

---

[7]Plaintiff requests both a temporary restraining order and a preliminary injunction. (Id.) A temporary restraining order is usually sought "to preserve the status quo until the Court can conduct a thorough inquiry into the propriety of a preliminary or permanent injunction," Hospital Resource Personnel, Inc. v. United States, 860 F. Supp. 1554, 1556 (S.D. Ga. 1994) (Bowen, J.), but it is clear that Plaintiff does not seek to preserve the status quo. In any event, the Court has evaluated Plaintiff's request under the well-known standards generally applicable to both types of requests for injunctive relief. Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those for a preliminary injunction." (citation omitted)).

[8]Plaintiff does not explain what action on his part motivated the alleged retaliation against him. (See doc. no. 56.)

13

from sending outgoing mail. (Doc. no. 61-1 (hereinafter "Johnson Aff."), ¶¶ 5-16.) Defendant has also produced records showing that Plaintiff signed for his legal mail on the dates in question. (Id., Ex. B.)

A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson County, 720 F.2d. 1511, 1519 (11th Cir. 1988)).

Here, Plaintiff's motion for preliminary injunctive relief bears no relation to this action. As explained above, the only claim remaining in this case concerns the provision of meals in segregated confinement that meet Plaintiff's religious dietary restrictions. There is not currently and there never has been any claim in this case concerning Plaintiff's mail or interference with his right to access to the courts. (See doc. nos. 1, 27, 38.) Nor is there any claim based on Plaintiff's allegations that he was sent to segregated confinement out of retaliation. Moreover, while Plaintiff contends that his mail has been obstructed and that his confinement in segregation was improper, Defendant has effectively disputed these

contentions with affidavit testimony and documentary evidence.[9] (See Johnson Aff. ¶¶ 12-16 & Ex. B.) Plaintiff has therefore plainly failed to demonstrate a substantial likelihood of success on the merits with regard to any of his requests for preliminary injunctive relief, which is a requisite element for establishing entitlement to such relief. See All Care Nursing Serv., Inc., 887 F.2d at 1537.

Additionally, Plaintiff has failed to establish that, if the injunction is not granted, there is a substantial threat that he will suffer irreparable injury. In order to satisfy the irreparable injury requirement, Plaintiff must show that the threat of injury is "neither remote nor speculative, but actual and imminent." Northeastern Fla. Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 973 (2d Cir. 1989)); see also Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (In order to obtain injunctive relief, a plaintiff must show "a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury.").

With regard to this requirement, Plaintiff merely asserts, without elaboration, that he needs injunctive relief "to prevent immediate and irreparable injury to [his] litigation." (Doc. no. 56, p. 2.) This conclusory assertion, which provides neither the nature of litigation in question nor the nature of the harm to such litigation purportedly caused by the interference with Plaintiff's mail, is entirely inadequate to demonstrate a substantial threat that he will suffer irreparable injury.

---

[9]The Court additionally notes that Plaintiff has managed to submit a mass of superfluous documents in this case despite the purported problems with the mail at TSP.

As for the final two elements of the preliminary injunction inquiry, Plaintiff has not demonstrated that the threatened harm outweighs the damage the proposed injunction may cause Defendant or that the injunction would not be adverse to the public interest. Thus, Plaintiff has not carried his burden of persuasion as to these elements, especially in light of the fact that federal courts should refrain from needless interference in the day-to-day administration of state prisons. See Prieser v. Rodriguez, 411 U.S. 475, 491-92 (1973).

Thus, Plaintiff has not satisfied the requisite elements for a preliminary injunction. Accordingly, his request for preliminary injunctive relief should be denied.

In addition, the Court notes that Plaintiff has filed a multitude of documents in which he complains of various prison conditions at TSP and reports events that allegedly occurred subsequently to the commencement of this action. (See doc. nos. 57, 60, 62, 71-81, 84-87, 91, 94, 95, 99-101, 103.) These documents are variously styled as declarations, affidavits, letters, notices, memoranda, and replies in support of previous requests for injunctive relief.[10] (See id.) In these filings, Plaintiff states, *inter alia*, that there have been other instances of interference with his mail; that he has been provided with inadequate medical care; that prison officials have improperly punished him on various occasions by confining him in the segregation unit; that prison officials have failed to follow his "shave" profile; that the facilities at TSP are unsanitary and do not allow for adequate ventilation; that prison officials

---

[10]The titles of certain of these filings suggest that they relate to the request for preliminary injunctive relief addressed above or Plaintiff's previous such requests in this case. (See, e.g., doc. no. 60 (titled "Declaration in Support of Plaintiff's TRO/Preliminary Injunction").) However, the factual allegations reveal that none of these later filings concern the same events as the previous requests. Moreover, in any event, none of these documents alter the conclusion that Plaintiff fails to show that he is entitled to any form of preliminary injunctive relief in this case.

have denied him adequate clothing; and that prison officials have improperly confiscated his legal materials and other property. (See generally id.) Defendant has responded to these documents, disputing Plaintiff's factual allegations and asserting that, to the extent that Plaintiff's documents consist of renewed requests for preliminary injunctive relief, such requests should be denied. (See doc. nos. 67, 70, 82, 83, 89-90, 92-93, 96-98.)

Of note, none of Plaintiff's filings relate to the claim at issue in this case. Nor do they concern the sole remaining Defendant in this action. Therefore, to the extent that such filings involve requests for preliminary injunctive relief, they should be denied for the same reasons as the request for preliminary injunctive relief discussed above. Moreover, the Court reminds Plaintiff that he should not routinely file discovery materials with the Court, an exception being if the materials are necessary for a motion or response that concerns his claim in this case.[11] Plaintiff is further cautioned that he should omit from future filings allegations that do not relate to his claim in this case, including general complaints about the

---

[11]The Court additionally notes that in one of Defendant's responses to Plaintiff's filings, he asserts that Plaintiff's new allegations do not relate to this case and that Plaintiff should not be permitted to amend his complaint to add new defendants or insert new claims into this action. (See doc. no. 70, pp. 3-4.) Seizing on this assertion, Plaintiff responded by stating that "it would be in the interest of justice to allow Plaintiff to amend this complaint." (Doc. no. 72, p. 2.) Notably, however, Plaintiff does not indicate precisely how he wishes to amend his complaint, and he has not filed a motion to amend his complaint. See Fed. R. Civ. P. 7(b) (providing that any request for a court order must be made by motion, which must, *inter alia*, state with particularity the grounds for seeking the order and state the relief sought). Moreover, Plaintiff has previously been cautioned against attempting to amend his complaint in an improper piecemeal manner. (Doc. no. 10, pp. 2-4.) Therefore, absent a motion that complies with the applicable procedural requirements and the Court's previous instructions regarding amendment (see id.), there is no basis for considering any amendment to Plaintiff's complaint.

17

conditions at TSP and descriptions of immaterial events that occurred after the commencement of this action.

III. **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss and Plaintiff's motion for preliminary injunctive relief be **DENIED**. (Doc. nos. 39, 56-1, 56-2.) Should this recommendation be adopted as the opinion of the District Court, Defendant should be required to file an answer to Plaintiff's complaint within 14 days of such adoption, consistent with Federal Rule of Civil Procedure 12(a)(4)(A). Furthermore, the stay of discovery currently in place should be lifted, and a Scheduling Notice setting the deadlines in this case should issue upon the filing of Defendant's answer. Finally, the Court notes that Plaintiff has a pending motion for summary judgment, and Defendant's obligation to respond to that motion was stayed pending resolution of the instant motion to dismiss; if the Court's recommendation is adopted as the opinion of the District Court, Defendant should be required to respond to Plaintiff's motion for summary judgment within 45 days of such adoption, consistent with the terms of the Court's prior Order.[12] (Doc. no. 68, p. 3.)

SO REPORTED and RECOMMENDED this 30th day of July, 2012, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[12]As noted in the prior Order, Defendant is not foreclosed from requesting an additional extension of time in which to respond to Plaintiff's summary judgment motion by filing a motion that complies with Federal Rule of Civil Procedure 56(d).

18