IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| LESTER J. SMITH, JR., | ) |
| Plaintiff, | ) |
| v. | ) CV 311-044 |
| DONALD BARROW, | ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The case is presently before the Court on Plaintiff's motion for summary judgment. (Doc. no. 58.) Defendant has filed a response (doc. no. 143), and Plaintiff has filed a reply (doc. no. 145).[2] For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**.

---

[1]Although Plaintiff is currently incarcerated at GSP, his complaint concerns events that occurred at Telfair State Prison ("TSP") in Helena, Georgia.

[2]Of note, discovery in this case was stayed pending resolution of Defendant's first motion to dismiss. (Doc. nos. 39, 45.) Plaintiff filed his motion for summary judgment after this stay was imposed, and, upon Defendant's motion, the Court stayed Defendant's obligation to respond to Plaintiff's motion for summary judgment pending resolution of Defendant's motion to dismiss. (Doc. nos. 66, 68.) After Defendant's first motion to dismiss was denied, the stays of discovery and of Defendant's obligation to respond to Plaintiff's motion for summary judgment were extended pending resolution of a second motion to dismiss filed by Defendant. (Doc. nos. 107, 112, 123.) When Defendant's second motion to dismiss was granted in part and denied in part, the stays were lifted, and Defendant's response timely followed. (Doc. nos. 112, 138, 143.)

I.  FACTS

Plaintiff was incarcerated at TSP during the time period relevant to this case. (Doc. no. 1, p. 7.) His movement history shows that Plaintiff was transferred to TSP on April 6, 2010, and then transferred to Ware State Prison on May 6, 2010. (Doc. no. 143-3, p. 3.) Defendant was employed by the Georgia Department of Corrections ("GDC") as the Warden at TSP from July 1, 2009 through June 30, 2011. (Doc. no. 143-1 (hereinafter "Barrow Aff."), ¶ 2.) According to Defendant, his responsibilities as Warden included performing inspections of the facility, including the living and segregation units, and providing responses to formal grievances submitted by inmates housed at TSP.[3] (Barrow Aff. ¶ 3.)

Plaintiff sole claim in this case is that he was denied "restricted vegan" meals in accordance with his religious beliefs as a practicing Muslim at TSP, particularly for a period of eleven consecutive days while he was in segregated confinement, some time in April of 2010.[4] (See doc. no. 1, pp. 7-9.) Plaintiff states that he "had been on a religious diet since February 9, 2010," and Defendant avers that GDC computer records indicate that Plaintiff was

---

[3] Plaintiff has also submitted an excerpt of the "Affidavit of David Frazier," apparently created for the purposes of another case, and refers to an Affidavit submitted by David Frazier in this case. (See doc. no. 58, pp. 9-10; doc. no. 67-3.) In these affidavits, Warden Frazier states, inter alia, that he has been the Warden at TSP since July 1, 2011 and describes his duties. (See id.) However, any statements by Warden Frazier concerning the time when he was Warden are simply irrelevant to Plaintiff's claim about events having occurred more than a year earlier when Defendant was the Warden.

[4] The remainder of the claims that Plaintiff attempted to assert in his complaint were dismissed when the complaint was screened pursuant to the IFP statute, 28 U.S.C. § 1915A. (See doc. nos. 27, 38.) Moreover, pursuant to Defendant's second motion to dismiss, Plaintiff's claims for injunctive relief were dismissed as well, meaning Plaintiff is only pursuing nominal damages for his First Amendment claim in this case. (Doc. nos. 112, 134, 138.) Thus, Plaintiff's allegations in the instant motion concerning destruction of his "legal materials" at TSP and the grievances he filed about the issue that he submitted as attachments have no bearing on the remaining claim in this case. (See doc. no. 58, pp. 1, 6-8.)

2

"in receipt of a Restricted Vegan profile since February 9, 2010." (Doc. no. 58, p. 2; Barrow Aff. ¶ 16.) While Defendant attests that GDC computer records indicated that Plaintiff was transferred to TSP to receive a "special diet," Defendant also avers that he "had no personal knowledge regarding the reason for Plaintiff's transfer to TSP." (Barrow Aff. ¶¶ 14-15.) Plaintiff further states that his religious dietary needs are "documented in [his] medical file,"[5] (doc. no. 58, p. 2), but Defendant avers that "[a]t no time [has he] reviewed [Plaintiff's] medical file," (Barrow Aff. ¶ 13).

In a "Declaration" submitted in conjunction with his motion for summary judgment, Plaintiff attests that Defendant "and his subordinates refused Plaintiff his dietary needs consistent with his religious belief." (Doc. no. 58, p. 1 (hereinafter "Pl.'s Decl."), ¶ 2.) Plaintiff states that as a result, he was "unable to practice his religious beliefs by being forced to eat meals inconsistent with his belief." (Id. ¶ 3.) Plaintiff further asserts that he "requested [a religious] diet through promulgated prison policy" and "was denied," and that he filed a grievance "immediately" thereafter. (Doc. no. 58, p. 2.)

According to Defendant, however, requests for participation in the Alternative Entrée Program at TSP, which is how an inmate obtains a "restricted vegan" diet, are reviewed and authorized or rejected by the Chaplain or the Chaplain's designee. (Barrow Aff. ¶ 19; doc. no. 143-2, pp. 7-8.) Moreover, Defendant avers that he "did not deny [Plaintiff] access to participation in the Alternative Entrée program." (Barrow Aff. ¶ 18.)

---

[5]Teresa Morris, who is currently employed as Director of Nurses at GSP, attests that Plaintiff's medical file "does not reflect that he is currently or has ever been medically assigned an alternative entrée vegan diet." (Doc. no. 143-4, ¶¶ 2, 3-4.) Plaintiff submitted an affidavit with his reply to Defendant's response to the instant motion in which he maintains that his "restricted vegan" diet is noted in his medical file and disputes Director Morris's attestation to the contrary. (See doc. no. 145, p. 1.)

Defendant has produced records showing that Plaintiff filed an informal grievance on April 12, 2010, in which he alleged that he was not receiving "restricted vegan" meals in violation of his "free exercise right." (Doc. no. 143-2, p. 4.) When his informal grievance was not resolved, Plaintiff completed a formal grievance, again stating that he "[had] not received a restricted vegan meal." (Id. at 3; Barrow Aff. ¶ 4.) Plaintiff's formal grievance was denied by Tim Spires, Deputy Warden of Security at TSP, on May 6, 2010, with the provided reason being that Plaintiff "[had] not completed the alternative entrée paperwork." (Doc. no. 143-2, p. 3; Barrow Aff. ¶¶ 10-11.) Defendant avers that Deputy Warden Spires was an authorized designee at the time he responded to the grievance. (Barrow Aff. ¶ 12.)

Plaintiff specifically attests, on the other hand, that it was Defendant who denied Plaintiff's grievance, though he does not specify which grievance or provide the date that this particular grievance was filed or denied. (Pl.'s Decl. ¶ 4.) Plaintiff attached part of a grievance, dated May 5, 2010, to his motion, however, in which he complained that he had been "on a therapeutic diet (restricted vegan)," and that "[d]ue to T.S.P. not adhering [he] refused to eat a reg. tray and opt commissary," and that he ran out of commissary and missed over eleven meals in a row.[6] (Doc. no. 58, p. 5.) The grievance was received by Defendant on June 16, 2010, and denied by Defendant on June 18, 2010, with the stated reason being that Plaintiff "[had] not provided any evidence to substantiate [his] allegations," and that he "[was] seen on several occasions immediately prior to [his] sick call request and on several occasions following [his] request." (Id.)

---

[6]This grievance, submitted as an attachment to Plaintiff's motion for summary judgment, appears to be missing a page, as Plaintiff ended his "description of incident" with the word "(cont.)" and states "Please see attachment on pg. 2," but Plaintiff only submitted one page with the instant motion. (Doc. no. 58, p. 5.)

4

Defendant finally reports that on "an unknown date," Plaintiff "verbally complained to [him] about not receiving an Alternative Entrée diet." (Barrow Aff. ¶ 20.) According to Defendant, he advised the grievance coordinator at TSP about Plaintiff's complaints and was informed that Plaintiff "had refused to complete the form necessary for participation in the Alternative Entrée Program." (Id. ¶¶ 21-22.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-

---

[7]For purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

5

moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Plaintiff's Claim against Defendant

In his motion for summary judgment, Plaintiff contends that he has established that Defendant is liable for the denial of meals in accord with Plaintiff's religious beliefs. (Doc. no. 58, pp. 2-3.) Defendant contends that Plaintiff is not entitled to summary judgment because he has failed to establish that Defendant has engaged in any wrongdoing or that he can be held liable for the alleged misconduct of his subordinates. (Doc. no. 143, pp. 6-11.) Defendant also

contends that he is entitled to qualified immunity.[8] (Id. at 12-14.) Assuming *arguendo* for purposes of resolving the instant motion that a constitutional violation occurred when Plaintiff was denied his "religious diet" at TSP,[9] for the reasons set forth below, Plaintiff fails to establish Defendant's liability for the alleged violation at this juncture.

### 1. Personal Participation

Plaintiff contends that he is not attempting to impose liability on Defendant based on *respondeat superior* or vicarious liability, but rather based on Defendant's "personal participation" in the alleged constitutional violation. (Doc. no. 145, p. 4.) Regarding personal participation, however, Plaintiff has only attested, without elaboration, that Defendant "and his subordinates" refused Plaintiff his dietary needs. (Pl.'s Decl. ¶ 2.) Nowhere does Plaintiff adduce any evidence showing *how* Defendant actually participated in depriving him of meals in accord with his religious beliefs. To that end, Defendant has attested that the Chaplain or his designee, not the Warden, would be responsible for approving or denying Plaintiff's request for "restricted vegan" meals. (See Barrow Aff. ¶ 19.) Most significantly, Defendant has attested that he personally "did not deny [Plaintiff] access to participation in the Alternative Entrée program."[10] (Id. ¶ 18.) At the very least, then, there remains an issue of fact concerning

---

[8] Defendant also points out that Plaintiff's motion contains a "list of undisputed facts" that is not supported with citations to the record as required by Loc. R. 56.1. (See doc. no. 58, p. 2.) While the Court does not sanction Plaintiff's failure to comply with the Local Rules, it agrees with Defendant that even if Plaintiff's "undisputed facts" are accepted as true and properly supported in the record, Plaintiff fails to establish that he is entitled to summary judgment in his favor, as discussed in greater detail infra.

[9] To be clear, the Court is not making a finding at this time that a First Amendment violation occurred in this case.

[10] Plaintiff contends in his reply that Defendant's "personal participation is established as his duties of a warden," and that the "affidavit of Warden David Frazier vividly describes the

7

whether Defendant actually participated in the alleged constitutional violation.[11]

### 2. Supervisory Liability

Plaintiff also contends that Defendant can be held liable as a supervisor because he "knew of said violation of Plaintiff's right and refused to correct it." (Doc. no. 58, pp. 2-3.) Supervisory officials such as Defendant "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). Rather, in order to impose liability on a supervisory official, a plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

As noted supra Part II. B. 1, there remains an issue of fact concerning whether Defendant actually participated in any purported constitutional violation. Thus, Plaintiff has failed to establish Defendant's liability as an actual participant, and can only prevail by showing a casual connection between Defendant's actions and the alleged constitutional violation.

---

responsibilities of a warden's duties." (Doc. no. 145, pp. 4-5.) As noted earlier, whatever Warden Frazier may have described as the Warden's responsibilities more than a year after the events alleged here is simply irrelevant. In any event, Plaintiff fails to explain exactly *how* the responsibilities of the Warden establish that Defendant personally participated in any purported constitutional violation.

[11]Plaintiff also contends for the first time in his reply that Defendant "transferred Plaintiff to Ware State Prison where said diet is not issued period at that prison." (Doc. no. 145, p. 6.) Notably, this allegation does not concern the claim at issue in this case, whether Plaintiff was denied his religious diet *while at TSP*. In any event, Plaintiff has adduced no evidence showing that Defendant played any role in his transfer.

8

Hartley, 193 F.3d at 1269.

"The causal connection can be established when a history of widespread abuse[12] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003)).

As Defendant persuasively contends, Plaintiff has adduced *no* evidence showing a custom or policy of denying inmates at TSP of their religious dietary needs, including those in segregation.[13] (Doc. no. 143, p. 9.) Furthermore, Defendant has submitted affidavits and other record evidence showing that there was in fact a policy of providing for the special dietary needs of inmates with religious preferences, provided they completed the appropriate paperwork. (See Barrow Aff. ¶¶ 6, 19; doc. no. 143-2, pp. 7-8.) Similarly, Plaintiff has adduced *no* evidence suggesting any "history of widespread abuse," Brown, 906 F.2d at 671,

---

[12]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

[13]Indeed, Plaintiff seems to partially concede this point, stating that Defendant "is not liable by a policy that would violate the Constitution," although he puzzlingly states that Defendant is liable "by his custom of acts," and cites to a deposition not in the record. (See doc. no. 145, p. 5.)

or that Defendant "directed [his] subordinates to act unlawfully," Cottone, 326 F.3d at 1360.

Instead, Plaintiff appears to contend in his reply that he has "established a causal connection" because Defendant "had knowledge of Plaintiff's First Amendment violation as it was stated in the grievance, as well as conversations with [] [D]efendant by Plaintiff," but failed to take action. (Doc. no. 145, pp. 5-6.) This contention lacks merit, however. A plaintiff does not establish a causal connection between the actions of a supervisory official and the purported misconduct of his subordinates simply by informing the supervisory official of the misconduct, whether informally or through a grievance. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (*per curiam*) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation."); see also Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on being informed "both personally and by letter" of allegedly improper prison conditions).[14]

---

[14]Even so, there clearly remains an issue of fact about whether and when Plaintiff informed Defendant that Plaintiff was being denied meals that he required because of his religious beliefs. Defendant attests that he had no personal knowledge about why Plaintiff was transferred to TSP, and that he never reviewed Plaintiff's medical file. (Barrow Aff. ¶¶ 13, 15.)

Accordingly, at this juncture, Plaintiff has fallen well short of establishing that Defendant can be held liable for the alleged interference with Plaintiff's religious practices based on the failure of officials at TSP to provide him with vegan meals. If nothing else, there still remain genuine disputes about facts that are material to Plaintiff's claim, specifically those relating to his attempt to impose liability on Defendant as a supervisory official. Thus, a reasonable jury certainly "could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Therefore, summary judgment is inappropriate at this stage of the proceeding, and the Court finds that Plaintiff's request for summary judgment should be **DENIED**.[15]

---

While Defendant attests that Plaintiff verbally complained to him that Plaintiff was "not receiving an Alternative Entrée diet," he does not state that Plaintiff informed him that he required the diet for religious reasons, and because the date is unknown, it is not clear that this conversation took place while Plaintiff was in segregation. (Id. ¶ 20.) Furthermore, according to Defendant, he investigated the issue and was told that Plaintiff was not being provided the diet because he had refused to fill out the required paperwork for the Alternative Entrée Program. (Id. ¶¶ 21, 22.)

On the other hand, Plaintiff has only stated, without elaboration, that he "filed a grievance" and that Defendant "denied Plaintiff's grievance on [the] first appeal level." (Pl.'s Decl. ¶ 4.) As noted supra, however, Plaintiff's informal grievance on April 12, 2010 and the formal grievance that followed were not reviewed by Defendant. (See doc. no. 143-2, pp. 3-4; Barrow Aff. ¶ 10.) Moreover, the grievance dated May 5, 2010 was not received by Defendant until June 16, 2010, more than one month after Plaintiff was transferred from TSP. (See doc. no. 58, p. 5.) Thus, even if the grievance could be said to have put Defendant on notice about *past* misconduct by his subordinates, that is not enough to establish a causal connection between Defendant and that misconduct. See Cottone, 326 F.3d at 1360 (suggesting a causal connection may be established where the supervisor "knew that the subordinates would act unlawfully and failed to stop them from doing so.") (emphasis added). Accordingly, there is, at best, a remaining issue of fact about whether and when Plaintiff even informed Defendant that his subordinates were potentially committing a constitutional violation – i.e., interfering with his religious practices – in denying Plaintiff his vegan meals.

[15]Thus, the Court need not reach Defendant's argument that he is entitled to qualified immunity. (Doc. no. 143, pp. 12-14.) The Court also notes that, according to the Scheduling Notice issued on December 21, 2012, discovery remains ongoing. Both parties are thus still free to file motions for summary judgment by the deadline stated therein. (Doc. no. 141.)

11

### III. CONCLUSION

For the foregoing reasons, the Court **REPORTS AND RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**. (Doc. no. 58.)

SO REPORTED and RECOMMENDED this 29th day of January, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE