# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 OCT 17 AM 8:40

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| LESTER J. SMITH, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 311-044 |
| | ) | |
| DONALD BARROW, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The case is presently before the Court on Defendant's motion for summary judgment. (Doc. no. 152.) Upon consideration of all facts and arguments presented by the parties in their respective briefs, and for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**, that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

## I. FACTS

Plaintiff was incarcerated at TSP during the time period relevant to this case. (Doc. no. 1, p. 7.) His movement history shows that Plaintiff was transferred to TSP on April 6, 2010, and then transferred to Ware State Prison on May 6, 2010. (Doc. no. 152-

---

[1]Although Plaintiff is currently incarcerated at GSP, his complaint concerns events that occurred at Telfair State Prison ("TSP") in Helena, Georgia.

1, p. 2.) Defendant was employed by the Georgia Department of Corrections ("GDC") as the Warden at TSP from July 1, 2009 through June 30, 2011. (Doc. no. 152-3 (hereinafter "Barrow Aff."), ¶ 2.)

Plaintiff's sole remaining claim in this case is that he was denied "restricted vegan" meals in accordance with his religious beliefs as a practicing Muslim at TSP, particularly for a period of eleven consecutive days while he was in segregated confinement, sometime in April of 2010.[2] (See doc. no. 1, pp. 7-9.) According to Defendant, requests for participation in the Alternative Entrée Program at TSP, which is how an inmate obtains a "restricted vegan" diet, are reviewed and authorized or rejected by the Chaplain or the Chaplain's designee. (Barrow Aff. ¶ 22.) Plaintiff admits that he was not on the program list upon his arrival to TSP,[3] but states that he requested inclusion by completing the appropriate documents and submitting them by mail internally to the

---

[2] The remainder of the claims that Plaintiff attempted to assert in his complaint were dismissed when the complaint was screened pursuant to the IFP statute, 28 U.S.C. § 1915A. (See doc. nos. 27, 38.) Moreover, pursuant to Defendant's second motion to dismiss, Plaintiff's claims for injunctive relief were dismissed as well, meaning Plaintiff is only pursuing nominal damages for his First Amendment claim in this case. (Doc. nos. 112, 134, 138.) Thus, Plaintiff's allegations in his current responses to Defendant's instant motion concerning The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000 et seq., regarding Muslims being denied a Halal diet by GDC, (doc. no. 163, pp. 6-12), being denied group worship, (doc. no. 164, p. 2), and being denied participation in the Alternative Entrée Program at GSP, (doc. nos. 167, 168), have no bearing on the remaining claim in the case.

[3] Plaintiff also states that his religious dietary needs are documented in his medical file. (See doc. no. 58, p. 2; doc. no. 163, p. 4.) Teresa Morris, who is currently employed as Director of Nurses at GSP, attests that Plaintiff's medical file "does not reflect that he is currently or has ever been medically assigned an alternative entrée vegan diet." (Doc. no. 152-9, ¶¶ 2, 3-4.) Regardless, Defendant testifies by affidavit that "[a]t no time [has he] reviewed [Plaintiff's] medical file," (Barrow Aff. ¶ 16).

2

prison Chaplain. (Doc. no. 163, p.3.) However, after he received no reply, he filed informal grievance no. 47029. (Id.)

Prison records confirm that Plaintiff filed informal grievance no. 47029 in April of 2010, in which he alleged that he was not receiving "restricted vegan" meals in violation of his "free exercise right." (Doc. no. 152-8, p. 40.) Chaplain Freddie Castle indicated in his response to informal grievance no. 47029 that inmates who wish to participate in the restricted vegan plan must, "must complete an addendum giving specific religious reasons for the selection." (Barrow Aff. ¶¶ 33, 42; doc. no. 152-6, p. 7.) TSP Grievance Coordinator Misty Winters noted that Plaintiff had "refused to take the form and fill it out." (Barrow Aff. ¶ 35; doc. no. 152-6, p. 6.)

Defendant testifies by affidavit that on "an unknown date," Plaintiff "verbally complained to [him] about not receiving an Alternative Entrée diet." (Barrow Aff. ¶ 23.) According to Defendant, he advised Misty Winters about Plaintiff's complaints and was informed that Plaintiff "had refused to complete the form necessary for participation in the Alternative Entrée Program." (Id. ¶¶ 24-25.) Plaintiff recalls a conversation he had with Defendant in April 2010, when he purportedly told Defendant he was not receiving the alternative entrée diet despite submitting two requests. (Barrow Aff. ¶ 26; doc. no. 152-8, p. 66 ln. 12-14.) According to Plaintiff, Defendant advised him to file a grievance. (Barrow Aff. ¶ 28; doc. no. 152-8, p. 66 ln. 16-21.)

Plaintiff then filed formal grievance no. 84378, which was denied by Tim Spires, Deputy Warden of Security at TSP, on May 6, 2010, because Plaintiff "[was] instructed to complete the proper paperwork" and had "refused to take the form and fill it out."

(Doc. no. 152-6, p. 4; Barrow Aff. ¶¶ 37-38.) Deputy Warden Spires was an authorized designee at the time he responded to the grievance. (Barrow Aff. ¶ 39.) Plaintiff's appeal of this decision was denied on June 20, 2011. (Doc. no. 152-6, pp. 2-3.)

Defendant testifies by affidavit that he "did not participate in the facilitation or the authorization of Plaintiff's participation in the Alternative Entrée Meal Program." (Barrow Aff. ¶ 21.) Plaintiff specifically attests, on the other hand, that it was Defendant who denied Plaintiff's grievance and attaches formal grievance no. 48362 as proof. (Doc. no. 164, p. 5.) Plaintiff only attached part of this grievance, dated May 5, 2010, in which he complained that he had been "on a therapeutic diet (restricted vegan)," and that "[d]ue to T.S.P. not adhering [he] refused to eat a reg. tray and opt commissary," and that he ran out of the commissary and missed over eleven meals in a row.[4] (Id.) After proceeding through the proper channels and being denied, the grievance was received by Defendant on June 16, 2010, over one month after Plaintiff was transferred out of TSP. (Id.) Defendant affirmed the prior denials of the grievance on June 18, 2010, with the stated reason being that Plaintiff "[had] not provided any evidence to substantiate [his] allegations," and that he "[was] seen on several occasions immediately prior to [his] sick call request and on several occasions following [his] request." (Id.) Plaintiff's appeal of this grievance was denied on August 31, 2010. (Doc. no. 164, p. 6.)

---

[4]This grievance appears to be missing a page, as Plaintiff ended his "description of incident" with the word "(cont.)" and states "Please see attachment on pg. 2," but Plaintiff only submitted one page with the instant motion. (Doc. no. 164, p. 5.)

4

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Applicable substantive law identifies which facts are material in a given case.[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial.  Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).  Merely stating that the non-moving party cannot meet its burden at trial is not sufficient.  Id. at 608.

---

[5]For purposes of summary judgment, only disputes about material facts are important.  That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.     Merits of Plaintiff's Claims**

In his motion for summary judgment, Defendant contends that Plaintiff has failed to offer sufficient evidence in support of his claims that Defendant was liable for a violation of the First Amendment, and additionally asserts that he is entitled to qualified immunity. (See generally doc. no. 152-1). The Court agrees, as explained below.

**1.     Supervisory Liability under § 1983**

To prevail on a claim under 42 U.S.C. § 1983, a Plaintiff must allege a deprivation of any right privileges or immunities secured by the Constitution and laws. 42 U.S.C. § 1983. The Court assumes only for the sake of argument that a constitutional violation occurred when Plaintiff was denied his "religious diet" at TSP. Supervisory

6

officials such as Defendant "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). Rather, in order to impose liability on a supervisory official, a plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

"The causal connection can be established when a history of widespread abuse[6] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003)).

With these principles in mind, and drawing all justifiable inferences in Plaintiff's favor based on the evidence in the record, the Court finds that Plaintiff has failed to

---

[6]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration,* rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

establish a genuine issue of material fact regarding whether Defendant either personally participated in the alleged constitutional violation or whether there is a causal connection between Defendant and the alleged constitutional violation.

### i. Defendant did not Personally Participate in the Alleged Constitutional Violation

Plaintiff contends that he is not attempting to impose liability on Defendant based on *respondeat superior* or vicarious liability, but rather based on Defendant's personal involvement, and he argues that Defendant personally denied him his right to participate in the "Alternative Meal Program." (Doc. nos. 160, p. 2; 163, p. 12.) Plaintiff alleges that Defendant is "responsible for his institution to be in compliance of prisoners['] nutritional needs by overseeing food and farm services." (doc. no. 162, p. 2.) Plaintiff states that he put Defendant on notice verbally and through filing two grievances, (doc. no. 163, p. 6).

Plaintiff attests that he "verbally stated to Defendant after completing the alternative entrée request form and submitting it to the chaplain's office" that he was not receiving alternative entrees. (Doc. no. 161, ¶ 6.) Plaintiff then filed grievance no. 47029, which Chaplain Castle denied without any involvement or action by Defendant. (Id.) Plaintiff's contention that this shows Defendant personally participated in his alleged constitutional violation lacks merit. A plaintiff does not establish personal participation between the actions of a supervisory official and the purported misconduct of his subordinates simply by informing the supervisory official of the alleged

8

misconduct, whether informally or through a grievance.[7] Accordingly, the verbal notices

and first grievance that Plaintiff filed do not establish Defendant's actual participation.

See Asad, 158 F. App'x at 170-72.

Plaintiff points out that Defendant himself denied formal grievance no. 48362.

(Doc. no. 164, p. 5.) However, this grievance is irrelevant to Plaintiff's claim because

Defendant did not receive it until June 16, 2010, over one month after Plaintiff was

transferred from TSP. (See doc. no. 164, p. 5.) This was well after the alleged denial of

meals occurred and therefore cannot establish that Defendant personally participated in

the alleged violation.

Accordingly, no genuine issue of material fact exists as to Defendant's lack of

personal participation.

ii.     There is no Causal Connection Between Defendant and
        the Alleged Constitutional Violation

Plaintiff has also produced no evidence showing a custom or policy of denying

inmates at TSP of their religious dietary needs, including those in segregation. On the

contrary, Defendant has submitted affidavits and other record evidence showing that

---

[7]See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (*per curiam*) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation."); see also Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on being informed "both personally and by letter" of allegedly improper prison conditions).

there is a policy of providing for the special dietary needs of inmates with religious preferences, provided they complete the appropriate paperwork. (See Barrow Aff. ¶¶ 43-49; doc no. 152-4.)

Similarly, Plaintiff has produced no evidence suggesting any "history of widespread abuse," Brown, 906 F.2d at 671, or that Defendant "directed [his] subordinates to act unlawfully," Cottone, 326 F.3d at 1360. On the contrary, Defendant testifies by affidavit that he investigated Plaintiff's oral complaint about not receiving his alternative entrée, and Misty Winters told him that Plaintiff refused to fill out the paperwork. (Barrow Aff. ¶¶ 24-25.) Accordingly, the undisputed facts establish that there is no causal connection between Defendant and the alleged constitutional violation and Plaintiff cannot establish supervisory liability under § 1983.

## 2. Defendant is Entitled to Qualified Immunity

Even if Plaintiff could establish that Defendant was liable under § 1983, Defendant is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010). For an official's acts to be within his or her discretionary authority, they must be "(1) undertaken pursuant to the performance of [his or her] duties and (2) within the scope of [his or her] authority." Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (punctuation omitted) (quoting Lenz v.

10

Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)). If the defendant shows that he or she was acting within his or her discretionary authority, then "the plaintiff must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

Furthermore, "[a] right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the United States Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Here, Defendant has satisfied the threshold requirement of showing that he was acting within the scope of his discretionary authority, as he was on duty as a state prison employee during the relevant time period, a point which Plaintiff does not dispute. See Lenz, 51 F.3d at 1545. Accordingly, the Court must determine whether Plaintiff has established the violation of a constitutional right which was clearly established at the time of the violation. Townsend, 601 F.3d at 1158.

Defendant is entitled to qualified immunity in this case because the right at issue was not clearly established at the time of the alleged violation. The determination of "whether a constitutional right was clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Vinyard v. Wilson, 311 F.3d 1340, 1349-50 (11th Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001), *overruled on other grounds by* Pearson, 555 U.S. at 236). Factually similar cases from the relevant jurisdictions may be material to this determination, though prior cases need not demonstrate the unlawfulness of the challenged conduct in the exact same factual circumstance for qualified immunity to be overcome. See Hope v. Pelzer, 536 U.S. 730, 739 (2002). Rather, the issue here is whether the state of the law as of April 2010 gave Defendant fair warning that denying Plaintiff participation in the alternative entrée program because he failed to fill out the required forms was unconstitutional. See id. at 741. Such warning may be found in light of prior case law or where the conduct at issue "was so obviously at the core of what the [First] Amendment prohibits" that any reasonable officer would know it was unlawful. Vinyard, 311 F.3d at 1355 (quoting Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002)).

First, Plaintiff has not shown, and the Court is not aware of, any case in the United States Supreme Court, Eleventh Circuit Court of Appeals, or Supreme Court of Georgia in which a court has determined conduct to be unconstitutional in these factual circumstances. Yet, in the most factually-analogous case decided by one of the above courts, the Eleventh Circuit affirmed the district court's granting of summary judgment to defendants on claims alleging failure to provide religious meals. See Hathcock v. Cohen,

287 F. App'x 793, 801 (11th Cir. 2008) (*per curiam*). The court in that case noted that failure to receive a meal in accord with religious beliefs "due, at least in part, to [the prisoner's] own failure to provide sufficient information for the Chaplain's Office to confirm the sincerity of his belief" did not demonstrate a First Amendment violation. Id. at 801.

Finally, in the absence of clearly established case law on point, the Court must ask whether Defendant's conduct was so obviously at the very core of what the First Amendment prohibits that any reasonable officer would know it was unlawful. See Lee, 284 F.3d at 1199. The Eleventh Circuit has made clear that "[i]nterpretation and application of the free exercise clause has created, within that field of constitutional doctrine, areas dotted by unanswered questions." Smith v. Haley, 401 F. Supp. 2d 1240, 1250 (M.D. Ala. 2005) aff'd sub nom. Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007) abrogated by Sossamon v. Texas, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (U.S. 2011) (citing Grosz v. City of Miami Beach, Fla, 721 F.2d 729, 733 (11th Cir. 1983)). Here, Defendant independently investigated why Plaintiff was not receiving the meal in accord with his religious beliefs and Misty Winters informed him that Plaintiff refused to fill out the appropriate paperwork. Especially in light of the holding in Hathcock, the Court finds that Defendant's conduct was not so obviously at the very core of what the First Amendment prohibits that any reasonable officer would know it was unlawful. Lee, 284 F.3d at 1199.

In short, because the existing law in effect at the time of the events giving rise to this action would not make it apparent to a reasonable officer that the conduct described

in Plaintiff's complaint would violate an inmate's constitutional rights, Defendant is entitled to qualified immunity.

## III.   CONCLUSION

The Court **REPORTS AND RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** (doc. no. 152), that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 17th day of October, 2013, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE